IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-00154-FL

| | |
|---|---|
| **William E. Hitchcock,**<br><br>        Plaintiff,<br><br>v.<br><br>**Carolyn Colvin**, Acting Commissioner of Social Security,<br><br>        Defendant. | **Memorandum & Recommendation** |

  Plaintiff William E. Hitchcock instituted this action on August 22, 2014, to challenge the denial of his application for social security income. Hitchcock claims that Administrative Law Judge McArthur Allen erred in failing to properly weigh the opinions of his treating physician, in assessing Hitchcock's credibility, and in evaluating his allegations of pain. Both Hitchcock and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment in their favor. D.E. 19, 21.

  After reviewing the parties' arguments, the court has determined that ALJ Allen reached the appropriate decision. There is substantial evidence to support ALJ Allen's determination that the opinions of Dr. Kevin McKnight, Hitchcock's treating physician, deserved only partial weight, that Hitchcock's credibility was diminished, and that his allegations of pain were not fully credible. Therefore the undersigned magistrate judge recommends[1] that Hitchcock's

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

I. Background

On October 31, 2011, Hitchcock filed an application for disability insurance benefits on the basis of a disability that allegedly began on September 1, 2006. After his claim was denied at both the initial stage and upon reconsideration, Hitchcock appeared before ALJ Allen for a hearing on August 23, 2013. ALJ Allen determined that Hitchcock was not entitled to benefits because he was not disabled. Tr. at 25–37.

In his decision, ALJ Allen found that Hitchcock had the following severe impairments: psoriatic arthropathy, fibromyalgia, and chronic pain syndrome. *Id*. at 27. ALJ Allen also found that his impairments, alone or in combination, did not meet or equal a Listing impairment. *Id*. at 29. ALJ Allen determined that Hitchcock had the residual functional capacity ("RFC") to perform light work with the following limitations: occasional climbing of stairs and ramps; occasional bending, balancing, stooping, crawling, kneeling, and crouching; can never climb ropes, ladders, or scaffolds; should avoid hazardous machinery and vibrations; should avoid concentrated exposure to heat, cold, and moisture; and requires a low production occupation with no complex decision-making, constant change, or dealing with crises. *Id.* ALJ Allen concluded that Hitchcock was unable to perform any past work but that, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing. *Id.* at 35–36. These jobs included: ticket seller, survey worker, and office helper. *Id.* at 36. Thus, ALJ Allen found that Hitchcock was not disabled. *Id*. at 37. After unsuccessfully seeking review by the Appeals Council, Hitchcock

commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on August 22, 2014. D.E. 5.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is

assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

C.  **Medical evidence**

Dr. McKnight, a rheumatologist, treated Hitchcock from 2005 through 2012. Hitchcock first saw Dr. McKnight for joint pain in his arms and hands, pain in his neck and low back, and a history of psoriasis. Hitchcock reported that he had psoriasis for 15 years. Tr. at 445. Dr. McKnight's records noted multiple tender points, headaches, and fatigue. *Id.* He diagnosed Hitchcock with probable enthesopathy from psoriatic arthritis and noted there was chronic pain syndrome and fibromyalgia overlap. *Id.* at 445–46. A laboratory study was negative for anti-nuclear antibody, a rheumatoid factor. *Id.* at 445. A December 2005 x-ray of the lumbar spine revealed mild degenerative changes. *Id.* at 450.

Hitchcock also saw dermatologist Dr. Maurice Dana on June 2, 2006. *Id.* at 230. Records observed that he had many plaques on his trunk and that he complained of joint pain. *Id.*

Hitchcock continued treatment with Dr. McKnight for chronic pain, fatigue, and insomnia. Examinations noted tenderness as well as decreased range of motion in his shoulder and spine. *Id.* at 418–65. In April 2006, Dr. McKnight observed an improvement in Hitchcock's symptoms and again diagnosed probable enthesopathy from psoriatic arthritis. *Id.* at 437. Records also note that Hitchcock was working at this time. *Id.* at 446–48. Imaging studies from June 2006 revealed minimal degenerative changes in the thoracic spine and no joint abnormalities in the right shoulder. *Id.* at 434.

In January 2007, Dr. McKnight observed osteoarthritis in Hitchcock's knees and positive diffuse tender points. *Id.* at 418. He diagnosed chronic pain syndrome, insomnia, and psoriatic arthritis. *Id.* By May 2007, Hitchcock was noted to be doing well and his psoriatic arthritis was stable. *Id.* at 336. By September 2007, Hitchcock was experiencing more joint pain, difficulty working and performing activities of daily living. *Id.* at 325. Dr. McKnight diagnosed active psoriatic arthritis. *Id.*

Hitchcock went to the hospital in January 2008 complaining of shortness of breath, chest pain, and weakness. *Id.* at 347–51. Cardiac tests revealed normal findings. *Id.* at 347.

In April 2008, Hitchcock complained of increased pain and tender points were noted at his wrists, elbows, and paraspinal area. *Id.* at 318. Dr. McKnight prescribed medications and, by July 2008, Hitchcock reported improvement and was running 2–3 miles every day. *Id.* at 316. By March 2009, Hitchcock reported that he was running five miles every day and that he had lost 30 pounds. *Id.* at 313.

Hitchcock contracted pneumonia in June 2009. *Id.* at 356-57. Dr. Scott Rice, Hitchcock's primary care physician, observed him to have fever, shortness of breath and no energy. Hitchcock reported to Dr. Rice that he was a marathoner. *Id.* at 357. By June 16, 2009, Hitchcock noted his condition had improved, he had increased energy, and had improved his walking distance. *Id.* at 355. He was advised to exercise as tolerated. *Id.* at 354.

Hitchcock also saw Dr. Dana later in June where records noted he had diffuse joint pain and numerous plaques on his body. *Id.* at 339. He also reported running five miles per day to this provider. *Id.* at 355. His medication regimen was adjusted. *Id.*

In September 2009, Hitchcock saw Dr. McKnight again, reporting increased pain in all joints. *Id.* at 346. His pain had decreased by October 2009, although in December 2009 he was

5

again experiencing increased pain and decreased sleep. *Id.* at 343–44. Dr. McKnight prescribed pain and steroid medications. *Id.* at 343.

At an appointment with Dr. Rice in May 2010, Hitchcock reported body aches and fatigue from cutting his grass a few days earlier. *Id.* at 353. Dr. Rice assessed psoriatic arthritis with questionable exacerbation. *Id.* Hitchcock saw Dr. McKnight again in July 2011 and complained of pain all over his body. *Id.* at 376. At this time, Hitchcock was taking three Vicodin a day instead of two as directed. *Id.* He noted that his medication did not help with his insomnia. *Id.* Dr. McKnight noted that although Hitchcock denied addiction to the medication, his pain was not in proportion to the clinical findings. *Id.* Dr. McKnight surmised that fibromyalgia or a new diagnosis may be causing the diffuse, incapacitating pain. *Id.*

Dr. McKnight also issued a Medical Source Statement dated October 5, 2011. *Id.* at 372. In it, he noted that Hitchcock suffered from severe fatigue and malaise. *Id.* He opined that Hitchcock could not stand, that he could lift only five pounds, and that he could occasionally use his hands for fine or gross manipulations. *Id.* He also stated that Hitchcock was permanently disabled from all employment due to psoriatic arthritis and chronic pain. *Id.*

In January 2013, Dr. McKnight wrote a letter on Hitchcock's behalf noting that he had treated him for eight years, that he had varying but persistent stages of psoriatic arthritis secondary to anxiety and depression, and that he suffered from chronic pain and insomnia. *Id.* at 411. Dr. McKnight further observed that he had tried numerous medications to treat his symptoms, to no avail. *Id.* He concluded that Hitchcock was permanently disabled. *Id.*

Dr. McKnight issued a second letter in August 2013 which noted that Hitchcock has psoriatic arthritis with enthesolpathy, fibromyalgia, insomnia, and depression. *Id.* at 464–65. It further stated that he had joint pain, stiffness, and malaise which affected his activities of daily

6

living as well as his concentration, persistence, and pace. *Id.* Dr. McKnight noted Hitchcock's treatment with many medications had brief success but brought no long term relief. *Id.* Dr. McKnight opined that Hitchcock would be unable to maintain a full-time work schedule due to his fatigue and pain. *Id.* He further observed that Hitchcock has difficulty with concentration for which he would require several breaks during the workday and he would miss at least four days of work per month. *Id.* Dr. McKnight also opined that Hitchcock would be unable to sit in one position more than 30 minutes and that he would need to lie down throughout the day. *Id.*

### D. Medical opinion evidence

Hitchcock first argues that ALJ Allen erred in weighing the opinions of Dr. McKnight, his treating rheumatologist. ALJ Allen gave Dr. McKnight's opinions only partial weight, finding not only that they offered an opinion on the ultimate issue of disability, which is reserved to the Commissioner, but also because his findings were inconsistent with other substantial evidence of record. The Commissioner maintains that ALJ Allen properly weight the medical opinion. The court determines that the ALJ did not err in weighing Dr. McKnight's opinions.

Hitchcock asserts that ALJ Allen erred in failing to consider Dr. McKnight's Medical Source Statement because it stated that he was totally disabled. Hitchcock maintains that an ALJ is still required to evaluate all the evidence to determine if the opinion is supported by the record. 20 C.F.R. § 404.1527(d)(1). Hitchcock also argues that ALJ Allen erred by misstating the evidence. Specifically, he contends that ALJ Allen stated that Dr. McKnight opined that medications relieved Hitchcock's symptoms. In fact, Dr. McKnight found that medications offered Hitchcock short term relief but were not successful in the long term. Additionally, while ALJ Allen stated that Hitchcock did not appear to have psoriasis at the time of the hearing, (tr. at

7

35), in fact Hitchcock testified that the resulting rash had been resolved but the pain associated with his psoriasis continued, (*id.* at 59–60).

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his

8

opinion is given. *See* 20 C.F.R. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See* 20 C.F.R. § 404.1527(d)(4) (1998).

Hitchcock correctly points out that ALJ Allen misstated the improvement in Hitchcock's condition when he noted that, at the time of the hearing, he did not appear to be suffering from psoriasis. Tr. at 35. Hitchcock testified that the skin rash had resolved but that his pain symptoms continued. *Id.* at 59–60. ALJ Allen also misstated that Hitchcock related he was a marathoner to his primary care physician on June 9, 2011. *Id.* at 35. As stated above, Hitchcock made this statement on June 11, 2009. *Id.* at 34. These misstatements are harmless, however, inasmuch as ALJ Allen's decision is supported by substantial evidence, as discussed below. *See, e.g., Chavis v. Colvin*, No. 1:11CV771, 2013 WL 7853486, at * 4 (M.D.N.C. March 4, 2013) (misstatement harmless error if the ALJ gave adequate explanation of her findings elsewhere in her decision); *see also Wright v. Comm'r of Soc. Sec.*, 386 F. App'x 105, 109 (3d Cir. 2010) (ALJ's misstatements in written decision harmless error when regardless of them "ALJ gave an adequate explanation supported by substantial evidence in the record"); *Hurtado v. Astrue*, No. 1:09-1073-MBS-SVH, 2010 WL 3258272, at *11 (D.S.C. July 26, 2010) ("The court acknowledges there may be situations in which an error in an opinion is harmless because it would not change the outcome of the ALJ's decision").

Dr. McKnight treated Hitchcock from 2005 to 2012. As noted above, he opined that Hitchcock would be unable to sustain full time employment due to his pain and fatigue. This legal opinion addresses the ultimate issue of disability, a determination reserved to the Commissioner. *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492–93 (6th Cir. 2010) (unpublished); *Morgan v. Barnhart*, 142 F. App'x 716, 721–22 (4th Cir. 2005) (unpublished); 20

9

C.F.R. § 404.1527(d). Accordingly, it is not entitled to any special weight, or to controlling weight, merely because it was issued by a treating physician. *See* 20 C.F.R. § 404.1527(e); S.S.R. 96–5p, 1996 WL 374183, at *2, 5 (July 2, 1996).

In reviewing the medical evidence, ALJ Allen noted, in detail, Dr. McKnight's notes of Hitchcock's symptoms, examinations, treatments and diagnoses. Tr. at 32–35. Dr. McKnight's treatment notes found reduced ranges of motion, tender points, and stiffness at many of Hitchcock's office visits. *Id.* at 309–336; 418–63. However, as ALJ Allen discussed, the medical evidence of record does not support Dr. McKnight's conclusion that Hitchcock was disabled. ALJ Allen observed that the record showed that: Hitchcock had psoriasis for 15 years before Dr. McKnight began treating him in 2005 (*id.* at 32); laboratory studies were negative for rheumatoid factors (*id.*); 2005 and 2006 imaging studies of his right shoulder, thoracic and lumbar spines noted no joint abnormalities and only mild or minimal findings (*id.*); Hitchcock continued to work until July 2006, approximately nine months after his alleged disability onset date (*id.*); in June 2008, Dr. McKnight noted improvement in Hitchcock's psoriatic arthritis with medication (*id.*); Hitchcock reported running 2–3 miles every day in June 2008 (*id.* at 34); in March 2009, Hitchcock reported running five miles every morning (*id.*); Hitchcock worked in insurance sales from January 2011 to April 2011, (*id.* at 32); and in June 2011, Dr. McKnight observed that Hitchcock's pain was disproportionate to objective findings (*id.*).

Additionally, Hitchcock's primary care physician's examinations were generally unremarkable. *Id.* Dr. Rice noted in June 2009 that Hitchcock was a marathoner and advised him to increase his exercise as tolerated (*id.* at 34) and in May 2010, Hitchcock reported he had been cutting his grass a few days earlier (*id.* at 35).

This evidence is inconsistent with Dr. McKnight's opinions that Hitchcock could not work due to his impairments. Moreover, this persuasive contrary evidence contradicts Dr. McKnight's assessment of Hitchcock's limitations and his prognosis for Hitchcock's condition.

Hitchcock's argument essentially boils down to the contention that ALJ Allen incorrectly considered the evidence before him. Although Hitchcock may disagree with the determinations made by ALJ Allen after weighing the relevant factors, the role of this court is not to re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. *Craig,* 76 F.3d at 589; *see also Shively*, 739 F.2d at 989. Accordingly, the undersigned cannot conclude that ALJ Allen erred in affording Dr. McKnight's opinions only partial weight.

### E. Credibility

Hitchcock also argues that ALJ Allen erred in concluding that he was less than credible. He maintains that ALJ Allen incorrectly required objective evidence of his pain. The Commissioner submits that there is substantial evidence to support ALJ Allen's credibility determination.

In this case, ALJ Allen found that Hitchcock's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence and limiting effects were not entirely credible. Tr. at 31. ALJ Allen then went on to discuss his reasoning. *Id.* at 31–35. ALJ Allen found that while Hitchcock alleges substantial pain and discomfort, the objective evidence did not substantiate pain at a level that would preclude gainful employment. *Id.*

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593–96; 20 C.F.R. § 404.1529(a)-(c); S.S.R. 96–7p, 1996 WL 374186, at *1 n.1; 2 (July 2, 1996). First, the ALJ must determine whether plaintiff's medically documented impairments

11

could cause plaintiff's alleged symptoms. S.S.R. 96–7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." S.S.R. 96–7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12-cv-1742, 2013 WL 1314781, at *7 (W.D. Pa. Mar. 28, 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

(1) Claimant's daily activities;

(2) The location, duration, frequency, and intensity of ... pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication ... taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any measures used to relieve pain or other symptoms; and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2013); S.S.R. 96–7p, 1996 WL 374186, at *3.

The ALJ may not discredit a plaintiff solely because her subjective complaints of pain and other symptoms are not substantiated by objective medical evidence. *See Craig,* 76 F.3d at 594. Nevertheless, "objective medical evidence and other objective evidence" are crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. *Id.* A plaintiff's allegations of pain and other symptoms "need not be accepted to the extent they are inconsistent with the available evidence," based on a consideration of the entire case record. *Id.*; *see* S.S.R. 96–7p, 1996 WL 374186, at *3. Further, "subjective evidence of pain cannot take precedence over objective medical evidence or lack thereof." *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984). *See also* 20 C.F.R. § 416.929 ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability...."); *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) ("a subjective allegation of pain, standing all alone, shall not be conclusive evidence of disability").

In support of this argument, Hitchcock notes that his health was poor beginning in 2008 when he reported to the hospital for chest pains. Tr. at 270. Hospital records note he looked very tired and that he was unable to perform a treadmill heart test. *Id.* at 271. By April 2008 Hitchcock reported increased pain and tenderness. *Id.* at 318–19. After his medications were adjusted, Hitchcock showed improvement and was able to run several miles every day. *Id.* at 314–15. His improved condition appeared to continue through September 2009, when he again reported increased pain and reduced range of motion. *Id.* at 345. While his condition improved in October 2009, it began to decline again in December 2009. *Id.* at 343–44. Hitchcock maintains that his condition has continued to deteriorate since that time. Hitchcock also argues that medications have brought him only temporary relief.

13

Substantial evidence supports ALJ Allen's credibility determination. Testimony from Hitchcock included statements that sitting was uncomfortable, that he had difficulty lifting a 12 ounce glass of milk, and that he experienced severe fatigue. *Id.* at 30. His wife stated that he was unable to do any work and that he could not hold a pencil, write, or sit at a desk. *Id.* at 31. However, as noted above, Hitchcock reported to his treatment providers that he ran up to five miles per day, that he mowed the lawn, and that he worked part-time as a radio announcer. Additionally, while ALJ Allen noted that the medical evidence clearly demonstrated that Hitchcock suffers from psoriatic arthropathy, fibromyalgia, and chronic pain syndrome (Tr. at 27), there was objective which did not support the level of impairment alleged by Hitchcock. Specifically, the medical evidence showed essentially normal laboratory findings and imaging tests indicating only mild or minimal degenerative changes. *Id.* at 304, 451. Imaging studies also showed only minimal degenerative changes in the thoracic spine (*id.* at 302, 435), no joint abnormality in the right shoulder (*id.* at 303, 434), and mild osteoarthritis with some scoliosis in the lumbar spine (*id.* at 303). He also continued to work after his alleged onset date as a realtor until 2006 (*id.* at 32), in insurance sales during 2011 (*id.*), and, at the time of the hearing, as a radio announcer (*id.* at 63). This evidence undermines Hitchcock's assertions that his impairments preclude any work activity.

Finally, Hitchcock contends that ALJ Allen erred by concluding his part-time work as a radio announcer was a reason to discredit him. He submits that this work was for only a few hours every week and that it was sedentary. He argues that, in light of the recent decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), ALJ Allen erred in failing to consider his inability to work full-time. In *Mascio*, the Fourth Circuit stated that the "although the ALJ concluded that [the claimant] can perform certain functions, he said nothing about [his] ability to

perform them for a full workday." *Id.* at 637. Hitchcock argues that ALJ Allen did not determine whether he could work eight hours per day, five days per week.

The Social Security Regulations define RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. 96–8p. Thus, by finding that Hitchcock had an RFC to perform light work with additional limitations, ALJ Allen implicitly found that he was capable of full-time work. *See Himes v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (holding that an RFC implicitly contains a finding that claimant is able to work an eight hour day); *Allen v. Colvin*, No. 2:12-cv-79-RLV, 2013 WL 6048985, at *8 (W.D.N.C. Nov. 14, 2013) ("[B]y virtue of finding that a claimant can perform work at a certain exertional level, the ALJ is implicitly finding that the claimant can sustain such work on a "regular and continuing basis.")

It may be true that part-time work does not equate to a finding that a claimant can work full time. However, part-time work is nonetheless indicative of an ability to work where a claimant claims that he or she is unable to work at all. Moreover, even part-time work that does not rise to the level of substantial gainful activity may be considered by an ALJ in determining whether a claimant is able to do more work than he or she is alleging. 20 C.F.R. § 404.1571(a); *see also Blair v. Astrue*, No. 5:10–cv–112, 2012 WL 625001, at *4 (W.D. Va. Feb. 24, 2012) (collecting cases explicitly condoning ALJ's consideration of prior non-SGA work in credibility determinations regarding what a claimant reports he or she can do). Thus, although it may be true that Hitchcock's part-time employment, without more, does not suggest he can engage in full-time employment, as noted above this work was one of several factors upon which ALJ Allen based the credibility determination.

An ALJ's credibility determinations must be given great deference. *See Johnson,* 434 F.3d at 653 (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ). As there is substantial evidence to support ALJ Allen's decision that Hitchcock was less than fully credible, his argument on this issue lacks merit.

### III.     Conclusion

For the forgoing reasons, the court recommends that Hitchcock's Motion for Judgement on the Pleadings (D.E. 19) be denied, that Colvin's Motion for Judgment on the Pleadings (D.E. 21) be granted, and that the Commissioner's final decision be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the**

**Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 12, 2015.

        *Robert T Numbers II*
        ROBERT T. NUMBERS, II
        UNITED STATES MAGISTRATE JUDGE