IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:14-CV-154-FL

| | | |
|---|---|---|
| WILLIAM HITCHCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross-motions for judgment on the pleadings (DE 19, 21). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert T. Numbers, II, issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the deadline for defendant's response has passed. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge, and upholds the decision of the Commissioner.

**BACKGROUND**

Plaintiff filed an application for disability benefits on October 31, 2011, alleging disability beginning September 1, 2006. This application was denied initially and upon reconsideration. A hearing was held on August 23, 2013, before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled in a decision dated October 17, 2013. After the appeals council denied plaintiff's request for review, plaintiff commenced the instant action on August 22, 2014,

seeking reversal of defendant's final decision, or, in the alternative, remand to defendant for further proceedings.

## DISCUSSION

A.     Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute the judgment of the court for that of the ALJ. Craig, 76 F.3d at 589, citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any

2

explanation for adopting the M&R.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> "(1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work."

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period between his alleged onset date of September 1, 2006, and September 30, 2010, his date last insured.  At step two, the ALJ found that plaintiff had the following severe impairments: psoriatic arthropathy, fibromyalgia, and chronic pain syndrome.  However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the impairments in the regulations.

Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work, except that he can only occasionally climb stairs or ramps; occasionally bend/balance, stoop, crawl, kneel, or crouch; should never utilize ropes, ladders, or

3

scaffolds; should avoid hazardous machinery/vibrations and concentrated exposure to heat, cold, and moisture; and has the capacity instead, to perform a low production occupation requiring no complex decision-making, constant change, or dealing with crises. In making this assessment, the ALJ found plaintiff's statements about the severity of his symptoms not fully credible to the extent they contradicted objective evidence on the record, and the ALJ weighed the medical evidence, explaining the weight he gave plaintiff's treating physician, Dr. McKnight. At step four, the ALJ concluded plaintiff was not capable of performing any past relevant work. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.

B.      Analysis

Plaintiff raises four objections. Plaintiff first asserts that the ALJ's RFC analysis violates the court's holding in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Plaintiff then turns his attention to the magistrate judge's statement of law regarding how much weight the ALJ must give to medical opinions. Finally, plaintiff raises two objections on the merits, alleging that the ALJ failed to give the opinion of Dr. McKnight due weight, and failed to properly assess plaintiff's credibility. The court will address each objection in turn.

1. Mascio and the RFC

Plaintiff objects to the magistrate judge's conclusion that the ALJ's findings did not violate the decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). In particular, plaintiff takes issue with the magistrate judge's determination that the ALJ's finding that plaintiff could do light work implicitly constituted a finding of capacity to perform full-time work without need for further

4

explanation. While the court declines to adopt the magistrate judge's reasoning on this issue, the court reaches the same conclusion that the case at bar is distinguishable from Mascio.

The court in Mascio found that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. at 636. (internal citations omitted) (emphasis added). Further, the court in Mascio found the ALJ's opinion "sorely lacking in the analysis needed" to review whether the ALJ's conclusions were supported by substantial evidence. Id. One example given by the court, was the ALJ's lack of analysis pertaining to the ability to perform full-time work, and "[t]he missing analysis [was] especially troubling because the record contains conflicting evidence as to Mascio's residual functional capacity—evidence that the ALJ did not address." Id. at 637. The "conflicting evidence" referenced by the court was the existence of two RFC determinations, containing conflicting levels of functionality, both placed into the administrative record by the ALJ. Id. The ALJ compounded this error by referring to one RFC assessment by exhibit number in his opinion, but then making findings more consistent with the other RFC assessment. Id. The court's ability to review for substantial evidence was frustrated further by extensive typographical errors in the ALJ's opinion, including a portion of the opinion where the ALJ trailed off without finishing an important sentence. Id. The court in Mascio found that the ALJ's opinion was so lacking in detail, that the court could not verify the sufficiency of his findings, nor determine what conclusion he ultimately intended. Id.

Plaintiff at bar makes much of the ALJ's failure to explain more specifically how plaintiff's part-time radio job, for two hours per day, three times per week, translates into an ability to work for eight hours per day, five days per week. Plaintiff misunderstands the spirit of Mascio, however.

5

The court in Mascio did not create a new test for specificity, but rather emphasized the need for ALJs to take the time to craft their opinions according to the regulations provided by SSR 96-8p, 1996 WL 374186 (July 2, 1996), so that claimants may understand the reasons behind determinations, and reviewing courts may have the facts needed to perform a substantial evidence inquiry.

The ALJ who reviewed plaintiff's claims performed a function-by-function analysis. After listing his conclusion that plaintiff had a RFC sufficient to perform light work, the ALJ spends the next several pages discussing the evidence he used in making this determination, including the objective medical evidence, plaintiff's subjective statements of pain, and the daily life activities plaintiff had been engaging in despite his allegations of disability. (Tr. 29-35). To perform the function-by-function assessment, the ALJ was required to detail the weight given to medical opinions and explain how credible he found plaintiff's testimony,[1] precisely because he explicitly had listed evidence from these sources as the evidence he considered in making his RFC assessment. The ALJ specifically mentioned taking plaintiff's work as a part-time radio announcer into account when choosing what weight to give Dr. McKnight's opinion, and generally takes this activity into account when providing his conclusion as to plaintiff's credibility only one paragraph later. (Tr. 35) ("His allegations to the contrary are not found to be supported by the record as a whole."). Plaintiff, in pointing only to the final three paragraphs of the RFC portion of the ALJ's opinion as evidence of an insufficient analysis, ignores the full extent of analysis performed in the preceding pages and incorporated by the ALJ in these summary paragraphs.

---

[1] Plaintiff's objections to the weight given the medical opinion and the ALJ's assessment of plaintiff's credibility are addressed further herein.

The ALJ in the case at bar has provided the court with a sufficiently drafted decision to review for substantial evidence. Even when an ALJ could have done a more precise job in explaining his decision, remand is not warranted when his decision is supported by the record, and is detailed enough to allow for review. See, e.g., Gilbert v. Colvin, No. 2:14-981-MGL-MGB, 2015 WL 5009225, at *6 (D.S.C. Aug. 19, 2015), Johnston v. Colvin, No. 9:13-2098-BHH, 2015 WL 893064, at *3 (D.S.C. March 3, 2015) (citing Bishop v. Comm'r of Soc. Sec., 583 Fed. App'x 65, 67 (4th Cir. 2014)). For these reasons, the court finds the ALJ's analysis does not conflict with the court's holdings in Mascio, and overrules plaintiff's objection.

2. Standard of Law Regarding Medical Opinions

Before reaching any objection on the merits, as an initial matter, plaintiff takes issue with the magistrate judge's statement of law regarding the deference to be given to the ALJ's findings. Plaintiff alleges that evaluating the weight assigned by the ALJ to medical opinions for "specious inconsistencies" is too deferential, and that the court should limit itself to the established "substantial evidence" standard. (Pl. Obj. to M&R at 4). The Fourth Circuit has found review for "specious inconsistencies" appropriate when the court must decide whether to disturb the ALJ's determination of weight given medical opinions. See Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' see Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion."). In any event, this standard is consistent with the overall "substantial evidence" standard, which the court uses in evaluating plaintiff's

objections. Where use of such language does not change the analysis, plaintiff's objection is overruled.

3. Dr. McKnight

Plaintiff objects to the ALJ's decision to give Dr. McKnight, a treating physician, only partial weight. Circuit precedent, however, does not require that a treating physician's testimony be given "controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). An opinion that is inconsistent with other substantial evidence will be accorded significantly less weight. Craig, 76 F.3d at 590. Additionally, a medical expert's opinion as to the ultimate conclusion of disability is not dispositive, as opinions as to disability are reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1)(1998).

While plaintiff acknowledges that a medical professional's opinion that a claimant is disabled may not be given full weight, plaintiff protests that the ALJ used this basis to dismiss the entirety of Dr. McKnight's opinion. The paragraph within the ALJ's opinion to which plaintiff refers in support of this argument does not explicitly state this. The ALJ gave Dr. McKnight's statement partial weight, because it reached the ultimate conclusion, but the ALJ did not dismiss Dr. McKnight's opinion. The ALJ, in fact, included much of the medical opinion in the preceding pages of analysis, where he detailed, piece by piece, the evidence he had received into the record and taken into consideration. (Tr. 29-35). In his summary paragraphs, the ALJ pointed to three particular reasons that had otherwise given him pause in giving full weight to Dr. McKnight's opinion, and the court declines to re-weigh these reasons and determine that the opinion was entitled to greater than partial deference.

Plaintiff raises the ALJ's statements about the effect of medication and plaintiff's work as a part-time radio announcer, however, as evidence that the decision as to weight was not supported by substantial evidence. While plaintiff is correct that there is no inconsistency between the medical opinion and the medication's effects on plaintiff's external psoriasis, there is substantial evidence on the record that contradicts Dr. McKnight's opinion concerning the severity and uncontrolled nature of plaintiff's "symptoms" generally. For example, plaintiff, when asked "Do the medications help with pain?" responds:

> "Again, if I was off Humira, it would– I would be in tears. In the rash, the skin, would come back. It does, the Humira does keep things under that level, but even still there might be couple, three months where it's very, very, bad."

(Tr. 60-61). Plaintiff did not specify that the Humira only contains the rash, but provided this response to a question about pain, plaintiff's allegedly most disabling symptom. At an earlier point in the testimony, plaintiff also combined his answers about the effect of medication on the external rash and on pain:

> "So in that regard, the psoriasis is kept at bay with the medication, in terms of the pain, it's just levels. Without the Humira the pain is very severe to the point of tears."

(Tr. 59-60, DE 23). In light of this testimony, it is not unreasonable for the ALJ to understand that for nine or ten months out of the year, the medication kept plaintiff's rash <u>and</u> pain under a crippling level.

Plaintiff then claims, that during the worst months, he is "bedridden," despite plaintiff's argument to the contrary in his objections. (Tr. 61), (Pl. Obj. to M&R at 10). Sometimes plaintiff is bedridden, cannot lift a twelve ounce glass, and can stand independently for only "seconds" (Tr. 60). Other times, however, the symptoms are under control to the extent that they do not bring

9

plaintiff to tears, and he is able to work as a radio-announcer. Plaintiff contends that his role as a part-time radio announcer involves "sitting in front of a microphone for a couple hours, and that's it and I do that three times a week," (Tr. 63), yet later, plaintiff says he appreciates the commercial breaks, because they give him the opportunity to "wiggle," to "move," and "to go to the bathroom, or stretch, or whatever..." (Tr. 64). This a degree of mobility quite different from that contended by Dr. McKnight's opinion.

Based on the foregoing, the court is satisfied that substantial evidence supports the ALJ's conclusion that contradictions existed between the opinion of the doctor as to the extent to which plaintiff's symptoms are controlled, and the details given by plaintiff as to the part-time job and plaintiff's own admissions. Accordingly, the ALJ properly weighed Dr. McKnight's medical opinion.

4. Credibility

In assessing the credibility of plaintiff's pain allegations, the ALJ must follow a two-step process: 1) the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms, including pain, and 2) the ALJ must evaluate the credibility of the statements regarding those symptoms. Craig, 76 F.3d at 594-96. The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, . . .laboratory findings," "daily activities," and "medical treatment." Id. at 595 (internal quotations omitted). The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 at *2.

10

Plaintiff objects to the ALJ's assessment of the credibility of plaintiff's stated subjective pain. Plaintiff alleges that the ALJ failed to discuss the relevance of the objective medical evidence showing pain, and incorrectly weighed this medical evidence and plaintiff's work attempts. The ALJ explained that the claimant described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. Preceding this conclusion, the ALJ detailed the evidence he took into account, including the objective medical evidence on the record. (Tr. 29-35). With regards to plaintiff's part-time work abilities, the court has addressed above the contradictions on the record, as noted by the ALJ. In his summary paragraph, the ALJ found further that evidence concerning plaintiff's jogging over the years and grass cutting activities harmed the credibility of his pain severity testimony. (Tr. 35). While the ALJ misstates the date which plaintiff was declared a marathoner, this appears to be a harmless typographical error[2] amounting to transposed numbers, in light of the other substantial evidence on the record. On the previous page, the ALJ correctly notes that it was June 11, 2009, rather than June 9, 2011, that plaintiff informed his primary care physician that he was a marathoner. (Tr. 34-35). Plaintiff claimed his pain was so severe that he was prescribed a cane at some point during 2007 or 2008 (Tr. 58), yet the record undisputedly indicates that plaintiff was running several miles per day, off and on, during the years 2008 and 2009.

In sum, substantial evidence supports the ALJ's credibility assessment, and there is no basis to conclude the outcome in this case would have been different had the ALJ correctly typed the date of the plaintiff's marathon activities. As a result, plaintiff's final objection is overruled.

---

[2] See Wright v. Comm'r of Soc. Sec., 386 F. App'x 105, 109 (3d Cir. 2010) (finding a misstatement of dates harmless error where the decision was otherwise sufficiently explained and supported by substantial evidence).

11

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation in the M&R, overrules plaintiff's objections, and upholds the Commissioner's decision. Accordingly, plaintiff's motion for judgment on the pleadings (DE 19) is DENIED, and defendant's motion for judgment on the pleadings (DE 21) is GRANTED. The clerk is DIRECTED to close the case file.

SO ORDERED, this the 30th day of September, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge